## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Gael A. O.,                                    Case No. 18-cv-3269 (WMW/TNL)

              Petitioner,

v.                                             **REPORT AND
RECOMMENDATION**

DHS/ICE Office of Chief Counsel,


              Respondent.

---

Gael A. O., Kandiyohi County Jail, 2201 23rd Street Northeast, Willmar, MN 56201 (*pro se* Petitioner); and

Ana H. Voss and Ann M. Bildtsen, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis MN 55415 and Jaclyn Elizabeth Shea, Department of Justice, Office of Immigration Litigation, P.O. Box 878, Ben Franklin Station, Washington D.C. 20044 (for Respondent).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Gael A.O.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1). This action has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Wilhelmina N. Wright, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that the petition be denied.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of Gabon. (ECF No. 11-1, p. 2). He entered the United States as a F1 non-immigrant in 2011. (*Id.*). In August 2013, Immigrations and

Custom Enforcement ("ICE") detained Petitioner and commenced removal proceedings against him, alleging that he failed to maintain or comply with the conditions of his non-immigrant status. (*Id*. at 2). Petitioner was released from custody after he posted bond. (ECF No. 12, p. 2).

Approximately four years later, Petitioner's bond was canceled after he was arrested for domestic assault. (*Id*.). Petitioner pled guilty to the charge and was sentenced to 365 days in jail. (*Id*., p. 2-3). Following his guilty plea, ICE served Petitioner with additional charges of admissibility or deportability, alleging that he was convicted of an aggravated felony or crime of violence for which the term of imprisonment was at least one year. (*Id*., p. 3). It appears Petitioner has been detained in immigration custody since August 28, 2017. (*Id*.).

On May 11, 2018, an immigration judge ordered Petitioner removed to Gabon. (*Id*.). The Board of Immigration Appeals dismissed Petitioner's appeal on November 2, 2018. Petitioner asked the Eighth Circuit Court of Appeals for review and a stay of removal. (*Id*.). Shortly thereafter, Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1). He contended that his 15-month detention (based on the time that he filed his petition) is unconstitutional, that he had been detained for more than six months without a bond hearing, and that he was still pursuing other avenues of relief related to his removal proceedings. (*Id*., p. 8). Petitioner asked for his immediate release or that the Court order his placement into the Intensive Supervision Appearance Program. (*Id*., p. 9).

On December 3, 2018, the Eighth Circuit granted Olery's request for a stay of removal. The Eighth Circuit then lifted that stay approximately six weeks later, after ICE received a valid travel document for Petitioner from the Embassy of Gabon. (*Id*., p. 4). Olery's appeal before the Eighth Circuit remains pending. (*Id*.).

On February 5, 2019, ICE attempted to remove Petitioner via commercial flight. (ECF No. 12, p. 4). Petitioner refused to comply, telling officials that he would rather be prosecuted for non-compliance with the removal order. (*Id*.). Shortly thereafter, Olery filed a motion in immigration court to reopen proceedings and stay his removal. (*Id*.). That motion was rejected on February 15, 2019, for lack of jurisdiction. (*Id*.).

Respondent believes there "is a significant likelihood of removal in the reasonably foreseeable future." (*Id*., p. 5). Respondent's belief is based on the fact that the Government of Gabon has been cooperative in issuing travel documents and because ICE is arranging a charter flight to West Africa that should occur in the next two months. (*Id*., p. 5). Respondent indicates that ICE plans to remove Petitioner on that flight. (*Id*., p. 5).

## II.    ANALYSIS

A person detained by the government may file a writ of habeas corpus to challenge the legality of his or her confinement and, if successful, obtain his or her release. *See Preiser v. Rodriguez,* 411 U.S. 475, 485 (1973). Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions. 28 U.S.C. § 2241; *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Court's jurisdiction to hear such challenges, however, is somewhat limited. Federal courts may consider the extent of the Government's "authority under the post-removal-period

3

detention statute." *Zadvydas*, 533 U.S. at 688; *see also* 8 U.S.C. § 1231(a)(4)(D). They may not, however, review discretionary decisions made by the immigration authorities. *See id*. In this case, the petition shall be denied without prejudice for several separate reasons.

First, before the Court can consider the merits of the petition, the Court must determine whether Petitioner has filed suit against the proper respondent. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (alteration in original) (quoting 28 U.S.C. § 2242). Accordingly, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447.

In this case, Petitioner's most recent filing indicates that he is being detained at the Sherburne County jail. At the time he filed suit, he was being detained at the Kandiyohi County Jail. But the only respondent that he named in his petition was the Office of Chief Counsel for the Department of Homeland Security or ICE. He did not include the warden of either facility in which he was detained or the local ICE field director. Nor did he include the Attorney General of the United States, a person who many courts have concluded is properly named as a respondent in immigration removal cases. *See De Jesus Paiva v. Aljets*, No. 03-cv-6075, 2003 WL 22888865 *5 (D. Minn. Dec. 1, 2003) (noting that though Attorney General should not be considered a custodian for habeas proceedings, there exists a "pragmatic need" that for an exception to the rule that petitioners should name their day-to-day custodian as a respondent). Typically, courts dismissed improperly named

respondents from a habeas petition. *See Simon v. L. LaRiva*, No. 16-cv-146, 2016 WL 1626819 *3 (D. Minn. March 10, 2016), *report and recommendation adopted by* 2016 WL 1610603 (D. Minn. Apr. 21, 2016) (dismissing improperly named respondents from petition brought under Section 2241). Here, the Office of Chief Counsel is the only respondent named in the petition. This ground alone would be sufficient for the Court to recommend that the entire petition be dismissed without prejudice.

The Court, however, would reach the same conclusion even if Petitioner had named the proper respondent in this matter. Petitioner first claims his detention is unlawful under the Fifth Amendment and 8 U.S.C. § 1226(c). He contends that under these authorities, he is entitled to a new bond hearing based on the length of his detention. But Section 1226(c) applies to aliens who have not yet had a final order of removal issued against them. *See Bah v. Cangemi*, 489 F. Supp. 2d 905, 919 (D. Minn. 2007) (characterizing Section 1226(c) as related to "pre-removal-period detention"). An order of removal becomes final upon "a determination by the Board of Immigration Appeals affirming such order" 8 U.S.C. § 1101(a)(47)(B)(1). In this case, the Board of Immigration Appeals dismissed Petitioner's appeal of his removal order on November 2, 2018. Petitioner is therefore subject to a final order of removal.

Because a final order of removal has been issued against Petitioner, his detention is governed by 8 U.S.C. § 1231. *See Zabvyas*, 533 U.S. at 688-89 (characterizing Section 1231 as post-removal-detention statute). That statute requires the Government to remove an alien from the United States within 90 days. 8 U.S.C. § 1231(a)(1)(A). The 90-day "removal period" begins on the later of: (1) "[t]he date the order of removal becomes

administratively final;" (2) the date of any final court order reviewing the removal order, provided that the court ordered a stay of removal; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(i)-(iii).[1] Typically, the Government holds the alien in custody during the removal period. *Zadvydas*, 533 U.S. at 682. If the alien is removable for, among other reasons, committing an aggravated felony or a crime involving moral turpitude, then the Government may detain the alien beyond the initial removal period or impose conditions of supervision under Section 1231(a)(3). *Id*. at § 1231(a)(6) (citing 8 U.S.C. § 1227). Because of Petitioner's criminal conviction, he is subject to detention beyond the initial removal period. *See id*.

Section 1231(a)(6) does not, however, authorize indefinite detention. *See Zadvyas*, 533 at 690 (noting that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem"). Indefinite detention violates the Due Process Clause of the Fifth Amendment unless: (1) "ordered in a criminal proceeding with adequate procedural protections" or (2) "in certain special nonpunitive circumstances," "where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Id*. (citation and internal quotation marks omitted). Thus, habeas relief is appropriate when "the detention in question exceeds a period reasonably necessary to secure removal." *Id*. at 699.[2]

---

[1] The fact that Petitioner was in pre-removal detention prior to his final order of removal has no bearing on this time period. The removal period begins only upon the latest of the three dates identified in 8 U.S.C. § 1231(a)(1)(B).

[2] In his reply memorandum, Petitioner argues for the first time that his detention violates the Eighth Amendment's prohibition on cruel and unusual punishment, "according to the findings of *Zadvydas*[.]" (ECF No. 13, p. 1). The Eighth Amendment, however, is not referenced anywhere in *Zadvydas*. *See generally* 533 U.S. 678. And Petitioner

Detentions ordered under Section 1231(a)(6) are presumed constitutional for six months. *Id*. at 701. Following this six-month period an alien may seek conditional release by providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*. If the alien does so, "the Government must respond with evidence sufficient to rebut that showing." *Id*. In addition, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future'" must decline. *Id*.

In this, Petitioner's post-removal detention period began either on November 2, 2018, when the Board of Immigration Appeals dismissed his appeal, or on January 28, 2019, when the Eighth Circuit Court of Appeals lifted the stay of removal.[3] Neither party identifies what day should control. Typically, the day the Court of Appeals lifts the stay controls for purposes of this analysis. 8 U.S.C. § 1231(a)(1)(B)(ii). But in this case, the Court of Appeals did not issue a final order upon lifting the stay, as is contemplated by Section 1231(a)(1)(B)(ii) when calculating the beginning of the removal period. Some courts, however, have concluded that because a stay prevents the alien's removal, it would pause the six-month period described in *Zadvyas*, which would restart only after the appellate court dissolves the stay, regardless of whether the appellate court also rules on the final order of removal. *Bah*, 489 F. Supp. 2d at 918-21; *see also Hendricks v. Reno*, 221 Fed. App'x 131, 133 (3d Cir. 2007) (noting that removal period restarts following

does not explain how his detention otherwise violates his Eighth Amendment rights. The Court therefore construes Petitioner's argument as challenging his detention only under the *Zadvyas* framework.
[3] It could be argued that the removal period restarted when Petitioner refused to cooperate with immigration authorities regarding his removal. *See Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008). Respondent does not, however, argue this to be the case, though it does note that Petitioner's obstruction allows for him to be detained longer.

conclusion of review by circuit court); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002) (per curiam) (concluding that the filing of a motion for stay of deportation interrupts the running of time under *Zadvydas*).

The Court need not resolve this issue, however, because the Court would reach the same conclusion regardless of what day post-removal detention began. A petitioner who seeks habeas relief from postremoval confinement may not file his or her petition immediately. Instead, the petitioner must wait until after the presumptively-constitutional six-month period described in *Zadvyas* has expired. *Mario A. B. v. Secretary of Homeland Sec.*, 18-cv-2705, 2019 WL 542944 *2 (D. Minn. Jan. 4, 2019); *Lee v. Immigration Enforcement Customs*, 16-cv-4270, 2017 WL 4174426 *4 (D. Minn. July 21, 2107); *Ahmed v. Brott*, No. 14-cv-5000, 2015 WL 1542131 *3 (D. Minn. Mar. 17, 2015); *Mehighlovesky v. U.S. Dept. of Homeland Sec.*, 12-cv-902, 2012 WL 6878901 *2 (D. Minn. Dec. 7, 2012); *see also Akinwale*, 287 F.3d at 1052. A petition for habeas relief filed before the end of six-month period is premature and must be dismissed. *Id*.

In this case, Petitioner filed his petition on November 26, 2018, well before the six-month removal time period, as measured by either the day the Board of Immigration Appeals dismissed his appeal or the Eighth Circuit Court of Appeals lifted the stay in this matter. During this time, his detention was presumptively constitutional. For this reason, too, the Court recommends that the petition be denied without prejudice as premature.

Petitioner's arguments would also fail even if the Court were to consider them on their merits. The record reflects that ICE attempted to remove Petitioner on February 5, 2019, but was unable to do so because Petitioner refused to cooperate with the removal

process.  "It is well established that *Zadvydas* does not apply where a detainee who holds the keys to his freedom thwarts his removal by lying or refusing to cooperate with ICE." *Akinsehinwa v. Donate,* 2008 WL 2951072, *4 (M.D. Pa. 2008) (citing 8 U.S.C. § 1231(a)(1)(C); *Kovalev v. Ashcroft,* 71 F. App'x 919, 924 (3d Cir. 2003); *Pelich v. I.N.S.,* 329 F.3d 1057, 1061 (9th Cir. 2003)); *see also Agbanyo v. Cabral,* 518 F. Supp. 2d 326, 327 (D. Mass. 2007); *Hydara v. Gonzales,* 2007 WL 2409664 *5 (D. Minn. 2007). For this reason as well, the Court would conclude that Petitioner is not entitled to habeas relief.

Furthermore, the record does not establish that Petitioner faces "no significant likelihood of removal in the reasonably foreseeable future." *Zadvyas*, 533 U.S. at 701. Generally, no significant likelihood of removal exists in five cases:

> (1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed*, 2015 WL 1542131 at *4. Petitioner does not establish that he falls into any of the above categories. Nor does he demonstrate any other circumstances that show the Government is unwilling or unable to effect his removal. The record shows that the Government has regularly removed detainees to Gabon and that it has obtained travel documents for Petitioner. These circumstances are sufficient to show a significant likelihood of removal at this time. *See Jaiteh v. Gonzales*, No. 07-1727, 2008 WL 2097592

*3 (D. Minn. Apr. 28, 2008) (concluding as such where "ICE has made diligent and reasonable efforts to obtain travel documents," the alien's native country "ordinarily accepts repatriation," and "that country is acting on an application for travel documents"). While Respondent has indicated as of February 20, 2019 that ICE believed it may be able to remove Petitioner in the next two months, Respondent is permitted some leeway in the exact timing of removal. *See Chen v. Banieke*, No. 15-cv-2188, 2015 WL 4919889 *5 (D. Minn. Aug. 11, 2015) (noting that nine-month delay was lengthy but not indefinite because government was working to obtain travel documents) (citing *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001)). Accordingly, the Court concludes that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Finally, Petitioner seeks habeas relief on two additional grounds. First, he notes that he is still awaiting a decision on his Violence Against Women Act ("VAWA") self-petition. In his habeas petition, Petitioner does not explain how the filing of a VAWA petition makes his detention unlawful, which for the reasons discussed above, is currently permitted by 8 U.S.C. § 1231 and *Zadvydas*. But in his reply memorandum, Petitioner claims the government is trying to deport him despite the fact that the United States Citizenship and Immigration Services ("USCIS") recently found his petition "to establish a prima facie case for classification under the self-petitioning provisions of the Violence Against Women Act." (ECF No. 14, p. 1). He argues that such a deportation would violate his due process rights. Petitioner does not, however, seek an injunction prohibiting his deportation while his VAWA petition is pending. *See generally See De Jesus Paiva v.*

*Aljets*, No. 03-cv-6075, 2003 WL 22888865 *5 (D. Minn. Dec. 1, 2003) (considering request for preliminary injunction halting deportation while VAWA petition is pending).

The fact that Petitioner has presented evidence establishing a *prima facie* case for eligibility under VAWA has no bearing on the legality of his current detention. *See id.* (concluding claims of illegal detention "are without merit" despite the fact that petitioners had established prima facie eligibility for VAWA benefits because petitioners had been detained for a reasonable period of time under *Zadvyas*). Petitioner also cites no legal authority to show that a delay in processing his VAWA petition entitles him to habeas relief. Many courts have concluded that they lack jurisdiction to review the pace at which UCSIC reviews applications for adjustment of status. *See Turkmen v. Holder*, 09-cv-1042, 2010 WL 2607152 *3 n. 2 (E.D. Mo. June 14, 2010) (collecting cases on both sides of issue). Others have concluded that a person has no due process interest in a government benefit that may be granted or denied in the government's discretion, as is the case with a VAWA self-petitioner seeking lawful immigration status. *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005).[4] Therefore, under these circumstances, the Court cannot conclude that delay in processing Petitioner's VAWA application entitles him to habeas relief. Should Petitioner wish to seek an injunction prohibiting his deportation while his VAWA petition is pending, he must expressly argue for such relief and seek it from the appropriate court.

---

[4] The Court also notes that Petitioner's VAWA claim would continue to be processed even if he were deported and living abroad. 8 U.S.C. § 1154(a)(1)(A)(v).

Second, Petitioner notes that he is in the process of challenging his criminal conviction on several different grounds. He has filed a motion for expungement, a petition for postconviction relief, an appeal with the Eighth Circuit Court of Appeals, and a request for a pardon from the Minnesota Board of Pardons. As with Petitioner's VAWA application, these challenges or requests for relief have no bearing on the legality of Petitioner's custody. Instead, these requests relate to the validity of his removal order, which is based in part on Petitioner's criminal conviction. This Court therefore has no jurisdiction to consider these arguments in a habeas corpus proceeding. *See Haider v. Gonzales*, 438 F.3d 902, 910 (8th Cir. 2006) (noting that removal order cannot be challenged in habeas corpus proceeding). Petitioner therefore is not entitled to habeas relief on this ground either.[5]

[continued on next page]

---

[5] When an alien challenges a removal order via a habeas corpus proceeding in district court, the case will often be transferred to the appropriate circuit court of appeals for review. *Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007). The Court declines to recommend transfer here because, as discussed above, the Court first recommended that the petition be dismissed for failure to name the proper respondent and other reasons, and is only considering the merits of Petitioner's arguments as an alternative to that dismissal.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 1), be **DENIED** and that the petition be **DISMISSED WITHOUT PREJUDICE.**

Date: May 10, 2019                         *s/ Tony N. Leung*
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota

                                                      *Gael A. O. v. DHS/ICE Office of Chief Counsel*

                                                      Case No. 18-cv-3269 (WMW/TNL)

### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).